UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NICHOLAS VOEGELI,

        *Plaintiff*,

   v.

JOHN C. PHELAN, *in his official capacity as Secretary of the Navy*,

        *Defendant*.

Civil Action No. 24-1236 (TJK)

**MEMORANDUM OPINION**

Plaintiff is a retired U.S. Navy Reserve officer who seeks recognition for saving someone's life over 30 years ago. But a nomination for the Navy's heroism award must include at least two eyewitness statements describing the basis for the award. And in Plaintiff's case, although he and another Naval officer say these statements once existed, they apparently no longer do. Plaintiff asked the U.S. Navy Board for Correction of Naval Records to alter his military record to reflect that he met the eyewitness statement requirement, but the Board declined. So he sued the Secretary of the Navy, alleging that the Board acted arbitrarily and capriciously in denying his application. Both parties move for summary judgment. For the reasons below, the Court will deny Plaintiff's motion, grant Defendant's cross-motion, and enter judgment for Defendant.

**I.    Background**

Plaintiff is a retired U.S. Navy Reserve officer who served in the military for over 20 years. Administrative Record ("AR") 5, 131. In 1992, while off-duty, Plaintiff was instructing sailing students in "heavy wind sailing" at a pier on Wisconsin's Lake Mendota, when he saw a struggling student whose boat had capsized. *Id.* at 70, 73. Plaintiff ordered another instructor to get a motorboat, "leaped into deep water," and swam about 200 feet "through high waves to the victim,"

who "was coughing excessively." *Id.* He held the student's head above the water until the boat arrived, saving his life. *Id.*

Someone at the U.S. Coast Guard told Plaintiff that his actions might qualify for the Coast Guard Lifesaving Medal ("GLM") and encouraged him to submit a nomination. AR 44, 69. Plaintiff assembled a nomination packet, which, he represents, included statements of two eyewitnesses—the student whose life he saved, and the sailing instructor who arrived by motorboat. *Id.* And Plaintiff's executive officer at the time, Captain David Lipinski, wrote a "summary of action . . . based on [his] reading of" those eyewitness statements. *Id.* at 68. Plaintiff recalls that the Coast Guard then told him that, "given [his] Navy status, the more appropriate recognition . . . was the Navy and Marine Corps Medal" ("Navy Medal"). *Id.* at 44. That award recognizes Navy officers' "distinguish[ing]" acts of "heroism not involving actual conflict with an enemy." 10 U.S.C. § 8296(a)(1). Thus, Plaintiff's GLM nomination was "terminated," and the Coast Guard instead awarded him a Public Service Commendation. AR 44, 68, 70–71.

For over two decades, Plaintiff thought he missed his shot for the Navy Medal because nominations generally must be submitted within three years of the "distinguishing act." AR 36, 56; Secretary of Navy, *Navy and Marine Corps Awards Manual* (SECNAV M-1650.1), App. 8A, ¶ 8A.1.a.[1] But in 2018, Plaintiff learned that this time limit does not apply to nominations referred by a member of Congress. AR 44; *see* 10 U.S.C. § 1130(a). So he reached out to Senator Ron Johnson. In 2019, Senator Johnson submitted Plaintiff's nomination materials to the Navy's Council of Review Boards. AR 24, 44, 47. But the Council responded that it could not act on the request because the documents submitted did not comply with several nomination requirements.

---

[1] *Available at* https://www.marines.mil/Portals/1/Publications/SECNAV%20M-1650.1.pdf?ver=2019-08-23-121307-600 (Aug. 16, 2019).

AR 48. In particular, the documents did not originate with Plaintiff's 1992 commanding officer, and they lacked statements "from at least two eyewitnesses." *Id.* The latter is a "vital requirement[]," for "heroism awards are based on objectively verifiable facts," and Plaintiff's own "account" of what happened "cannot form the factual basis for any decoration for heroism." *Id.* The Council enclosed the Navy's award manual, which makes that clear. AR 48; *see* SECNAV M-1650.1, App. 8A. It explains that a nomination package "must include" a "detailed description of" the nominee's "actions" that itself "includ[es] only facts that are substantiated by the accompanying evidence" and are not "derived from the award nominee." SECNAV M-1650.1, App. 8A, ¶ 8A.2.b, b(2), b(2)(b). And for "all awards for heroism," that evidence "must" include "notarized statements by at least two eyewitnesses," *id.* ¶ 8A.2.b, which must be "sufficient[ly] detail[ed] to support how the heroic act(s) rendered the awardee conspicuous and well above the standard expected," *id.* ¶ 8A.2.b(4)(a). The witnesses should also "opin[e]" on "the extent to which the nominee risked his . . . own life." *Id.*

Plaintiff tried to retrieve the eyewitness statements. He submitted a Freedom of Information Act request to the Coast Guard for all documents "submitted . . . relating to [his] nomination . . . for the Coast Guard Gold Lifesaving Medal." AR 72. But the Coast Guard found no such records. *Id.* And Plaintiff's efforts to find the individuals who had previously authored the sworn statements fared no better. *See id.* at 45.

In 2020, Senator Johnson followed up on his initial nomination, this time with an endorsement letter from Captain Lipinski. AR 24, 68. In an affidavit, Captain Lipinski "attest[ed] to the existence of the[] two sworn witness statements," noting that he "relied on them to write the summary of action which was included in" Plaintiff's nomination package for the GLM. *Id.* at 69. The Coast Guard, he explained, then "incorporated" this summary "into the citation for the Public

Service Commendation" that Plaintiff received "in lieu of" that medal. *Id.* Captain Lipinski also provided Plaintiff's Commendation, *id.* at 71, and the "citation [he] wrote as a summary of action, which he "hope[d] . . . the Board w[ould] consider" as "equivalent to the witness statements," *id.* at 68.

Because these materials included no endorsement from Plaintiff's "commanding officer at the time of the act," however, the Council of Review Boards again responded that they were incomplete. AR 74. Once Plaintiff received the necessary chain-of-command endorsement letters, Senator Johnson sent the revised nomination packet—which included Captain Lipinski's affidavit—to the Office of the Chief of Naval Operations. *Id.* at 78. The Office, however, declined to act on the request. *Id.* at 78. Navy policy "require[d]" two eyewitness statements, and the Secretary would "not accept" Captain Lipinski's letter "as a substitute." *Id.*

So Plaintiff applied to the Board for Correction of Naval Records ("Board"), AR 28, a civilian board authorized to "correct any military record when it considers it necessary to correct an error or remove an injustice," 10 U.S.C. § 1552(a)(1); 32 C.F.R. § 723.2(a). The "error or injustice" he identified: "the absence of the[] two witness statements." AR 40. Plaintiff thus asked the Board to "amend[] or otherwise correct[]" his records "to reflect," that he met "all requirements" for the Navy Medal, "including the two eyewitness statements required by regulation," and "that he was awarded the medal." *Id.* at 39. The Board should do so, Plaintiff argued, because Captain Lipinski swore that the eyewitness statements existed at one time and Plaintiff did all he could to find them. *Id.* at 40–41.

The Board sought an advisory opinion from the Navy Department Board of Decorations and Medals, which recommended denying Plaintiff's request. AR 23–26. It reasoned that, although Captain Lipinski "claim[ed]" he nominated Plaintiff for the GLM in 1992—and "that two

4

eyewitness statements were included with that nomination"—neither he nor Plaintiff "provide[d] any documentary evidence to support that claim." *Id.* at 25. Nor were "those witness statements . . . made available to the Department of the Navy." *Id.* And Plaintiff had previously been told that Captain Lipinski's "statements about alleged previous eyewitness testimony" and his "review" of them could not "substitute for" the actual statements. *Id.* The opinion also noted that Plaintiff's commanding officers at the time could have nominated him for the Navy Medal, yet they "opted not to." *Id.* at 25–26. Indeed, Plaintiff's service record contained "no nomination documents" at all; the Board had "only a copy of the [Coast Guard] commendation he ultimately received." *Id.* at 25. So given the presumption of regularity in government affairs, the Board had to presume that Plaintiff's chain of command did not nominate him for a Navy decoration for one of two reasons: either he did not meet the criteria for the medal, "or the chain of command thought a [Commendation] award was more appropriate." *Id.* at 25–26. Because "there has never been an official nomination for the" Navy Medal "that complied with the fundamental requirements for such nominations," and Plaintiff's petition also "fail[ed] to include the eyewitness testimony required in all such cases," Plaintiff was not entitled to that award. *Id.* at 23, 26.

Plaintiff responded to the advisory opinion, arguing it "contain[ed] numerous factual and substantive errors." AR 9. Among other things, Plaintiff quibbled that he "d[id] not merely 'claim' to have been nominated for the [GLM]" but that "[h]e was, in fact, nominated" for that award. *Id.* Captain Lipinski "attested" as much. *Id.* The advisory opinion also did not reflect Plaintiff's extensive efforts to procure the missing eyewitness statements. *Id.* at 10. But the opinion's main flaw was that it did not "engage [with] the evidence" Plaintiff had submitted to "fill[] the evidentiary gap caused by the absence of the eye-witness statements." *Id.* at 11. On Plaintiff's account, Captain Lipinski's affidavit was "direct evidence that these eyewitness statements existed and

5

attested to actions supporting the GLM." *Id.* at 12.  Plaintiff also objected to the Board's misapplication of the presumption of regularity and its speculation about the reasons Plaintiff was not nominated for a Navy decoration.  *Id.* at 12–13.

In August 2022, the Board denied Plaintiff's application for "insufficient" evidence showing "the existence of probable material error or injustice."  AR 1.  After considering "the entire record," including Plaintiff's responses to the advisory opinion, the Board "concurred" that Plaintiff's "own account of [his] own action cannot form the factual basis of any decoration of heroism." *Id.* at 3.  And it "was not willing to 'fill the evidentiary gap' and waive the eyewitness testimony requirement based on [Captain] Lipinski's testimony that such eyewitness statements previously existed as part of a [GLM] submission."  *Id.*  The Board also "noted that neither [Plaintiff] nor [Captain] Lipinski provided any documentary evidence to support such a claim, and the witness statements to date ha[d] not been made available."  *Id.*  Moreover, it would have "like[d] to have reviewed the [Public Service Commendation] nomination and/or any supporting evidence upon which it was based, but such evidence" had not been "made available to the Board" either.  *Id.* Thus, it "concluded that [Plaintiff] did not meet the baseline eligibility criteria for" the Navy Medal "consideration" and that "[Captain] Lipinski's testimony was not a functional equivalent of, or adequate substitute for, the two required eyewitness statements."  *Id.*

After the Board's denial, Plaintiff sued.  ECF No. 1.  He alleges that the Board acted arbitrarily and capriciously under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), when it "denied [his] application citing the lack of witness statements when the very error or injustice" he asked the Board to correct "was that his record lacks these witness statements.  *Id.* ¶ 64. Yet, Plaintiff says, "there is clear evidence that they existed at the time and satisfied" the GLM, and "therefore [the Navy Medal], award criteria."  *Id.*  Both parties now move for summary

judgment.  ECF Nos. 11, 12.

## II. Legal Standard

In APA cases, the usual summary-judgment standard does not apply because the Court's role is "limited" to "reviewing the administrative record." *Albino v. United States*, 78 F. Supp. 3d 148, 163 (D.D.C. 2015).  That is, the Court has no factfinding role because the case presents "a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  It must ask "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013).  On top of its purely procedural requirements, the APA directs courts to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2).

When evaluating a claim that agency action is arbitrary or capricious, courts must ensure that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *FCC v. Fox Television Stations*, 556 U.S. 502, 513 (2009) (citation omitted).  That standard does not empower a court to "substitute its judgment for that of the agency." *Id.* (citation omitted).  In other words, the agency's "policy choices" are not up for debate—only the "explanation it has given." *Id.* at 530.  That explanation must include a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).  The agency must also consider all "important aspect[s] of the problem"—that is, those Congress considered relevant. *Id.*

Military corrections boards like the Navy's may meet their obligation to provide a "reasoned explanation" for their decision by referencing or incorporating the reasoning of an advisory opinion. *Roberts v. United States*, 741 F.3d 152, 158–59 (D.C. Cir. 2014) (citation omitted).  And they are "entitled to even greater deference" than civilian administrative agencies. *Powers v.*

7

*Donley*, 844 F. Supp. 2d 65, 70 (D.D.C. 2012). Indeed, the Court "will only step in to correct 'the most egregious decisions'" to avoid becoming "'a forum for appeals by every soldier dissatisfied with [a military corrections board's conclusion].'" *Barber v. Emmert*, No. 23-cv-2465 (LLA), 2025 WL 870364, at *4 (D.D.C. Mar. 20, 2025) (first quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989), then quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)). The Court asks only whether the Board's "decision-making process was deficient," not whether [the] decision" itself "was correct." *Id.* (quoting *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995)). And the Board's decision will pass muster if it "minimally contains a rational connection between the facts" in the record "and the choice it made." *Albino*, 78 F. Supp. 3d at 164 (quoting *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)). It "need not be a model of analytic precision." *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 163 (D.D.C. 2011) (internal quotation marks and citation omitted).

**III.    Analysis**

    **A.    The Board's Decision Not to Correct Plaintiff's Military Records to Reflect That He Met the Requirements for a Navy Medal Is Reviewable**

Defendant first contends that the Court cannot resolve Plaintiff's APA claim because it would require review of a non-justiciable military decision. *See* ECF No. 12-1 at 11–15. It says that the decision to award a medal for heroism is a "discretionary" one that "reflects professional military judgment . . . similar to military personnel decisions," which courts "routinely find are not subject to judicial review." *Id.* at 12–13. But that argument is a strawman because Plaintiff does not seek to have the Court award him the Navy Medal or even declare that he should receive it.

Judicial review under the APA is unavailable if the challenged "action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), either because it is "traditionally" viewed as such or because the governing statute "is drawn so that a court would have no meaningful standard

8

against which to judge the agency's exercise of discretion," *Schieber v. United States*, 77 F.4th 806, 813 (D.C. Cir. 2023) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). Thus, when a statute "plainly confers a discretionary authority" to act—which the word "'may' clearly" signals—then the decision not to act is unreviewable under the APA. *Biden v. Texas*, 597 U.S. 785, 802 (2022) (emphases removed and citation omitted).

The decision to award the Navy Medal—an authority delegated to the Secretary of the Navy—is "the quintessential type of matter that courts have determined to be wholly within the agency's discretion." *Watervale Marine Co., Ltd. v. DHS*, 555 F. Supp. 3d 124, 140 (D.D.C. 2014). Under the statute, "[t]he President *may* award a medal called the 'Navy and Marine Corps Medal' . . . to any person who . . . distinguishes himself by heroism not involving actual conflict with an enemy." 10 U.S.C. § 8296(a)(1) (emphasis added). So there is no standard by which the Court could determine whether Plaintiff deserves that decoration. *See Coleman v. Kendall*, No. 22-cv-1822 (JDB), 2023 WL 4762582, at *11 (D.D.C. July 26, 2023) ("[A]warding the [Air Force Meritorious Service Medal] is a discretionary decision . . . which reflects essentially professional military judgment" and is "non-justiciable." (internal quotation marks and citation omitted)).

But Plaintiff is not challenging the Secretary's decision not to award him the Navy Medal. Nor is he asking the Court to order that Plaintiff receive that award. Rather, he claims that the Board arbitrarily and capriciously refused to correct his military record to reflect that he met the eyewitness-statement requirement—a violation for which he seeks a "[r]emand" to the Board "for further actions." ECF No. 1 ¶¶ 59–67; *id.* at 15. And without a doubt, "courts have the competency to review the decision of a military board of correction" like the one Plaintiff challenges "using

'familiar principles of administrative law.'" *Saint-Fleur v. McHugh*, 83 F. Supp. 3d 149, 154 (D.D.C. 2015) (quoting *Kreis*, 866 F.2d at 1511).[2]

Plaintiff's APA claim seems limited to challenging the Board's reasoning (or lack thereof) for refusing his request to waive the eyewitness requirement. True, one line in his complaint suggests otherwise. ECF No. 1 ¶ 65 ("Th[e] direct evidence could have supported a different decision regarding whether it was an error or injustice for [Plaintiff] not to be awarded the [Navy Medal]."). As noted, the Court has no business determining whether Plaintiff should receive that award, and it may not review an unfavorable decision on that score. But whether the Board's "decision-making process was deficient"—in part because, as Plaintiff contends, it "failed to grapple with" the evidence he put before it, *id.* ¶ 66—is a question the Court can decide. *Saint-Fleur*, 83 F. Supp. 3d at 154 (quoting *Kreis*, 866 F.2d at 1511).

> **B.  The Board's Decision Not to Correct Plaintiff's Miliary Records Was Not Arbitrary or Capricious**

Plaintiff's main argument is that the Board acted arbitrarily and capriciously in denying his application to correct his military records "solely because he could not provide eyewitness statements to support the [Navy Medal] nomination." ECF No. 11-1 at 22. That reasoning, he says, runs headlong into *Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014), because "the lack of eyewitness statements [wa]s the very error or injustice" his "application sought to correct." ECF

---

[2] To be sure, Plaintiff's application *to the Board* was broader: he asked not only that "his records be amended . . . to reflect that" he met "all requirements" for the Navy Medal, but also that his records show "that he was awarded the medal." AR 39; *see id.* at 32 (requesting "direct relief that awards [Plaintiff] the medal that his actions clearly merit"). Perhaps that is why the Board of Decorations and Medals' advisory opinion found, among other things, that he was "not entitled to the [Navy Medal]." *Id.* at 26. And in responding to that opinion, Plaintiff again asked that the Board "award him the [Navy Medal] for his heroic action." *Id.* at 14. But his application and supporting materials also make clear that was not all he requested.

10

No. 11-1 at 22.  Although the Court sympathizes with Plaintiff, it disagrees with his analogy to *Haselwander*.

In *Haselwander*, the plaintiff sought to correct his military records to reflect that he had been wounded in combat, required medical treatment, and was therefore eligible for a Purple Heart decoration.  774 F.3d at 993–94.  After receiving treatment for his injuries, Haselwander had "left immediately," and the medical team "never had a chance to fill out any medical paperwork."  *Id.* at 991, 994.  So his "Army records [di]d not show that he was wounded in hostile action."  *Id.* at 991.  Haselwander later asked the Army Board to correct the missing medical documentation and award him the Purple Heart, and he supported that request with evidence of his injuries and treatment.  *Id.*  But the Army Board found "no basis for [that] award" because "there [wa]s no evidence of record to show that [Haselwander] was treated for a wound that was sustained as the result of enemy action."  *Id.* at 995.  Haselwander followed up with more evidence, including "letters from fellow soldiers corroborating that [he] was injured in the rocket blast and treated by medical personnel."  *Id.*  Though the Army Board found that this evidence "clearly state[d] that the applicant was wounded in action," it still denied the application because "[t]here [wa]s no available *medical record* to corroborate the photographs" of Haselwander's injuries.  *Id.* (emphasis added).

The D.C. Circuit held that the Board's decision was arbitrary and capricious, "stunningly myopic," and "devoid of reasoned decisionmaking."  774 F.3d at 999 (internal quotation marks omitted).  "Haselwander proffered undisputed, creditable evidence to support his application," and it "ma[de] no sense for the Board to say, 'We are denying his application because he has no medical records,' where the very error stated in Haselwander's application . . . was that his Army record lacks the medical records of his injury and treatment."  *Id.* at 1000.  *Haselwander*'s main takeaway is this: when a servicemember asks the Board to correct his records by filling in the gap left by the

11

missing documentation, the Board acts arbitrarily and capriciously when it denies the application based solely on the absence of the missing records. The logic of that reasoning "runs in circles." *Haselwander*, 774 F.3d at 999.

This case is not like *Haselwander*. Plaintiff asked the Board to correct his military records to reflect that they contained "the two eyewitness statements required by regulation" so that he may qualify for the Navy Medal. AR 39. He submitted his own affidavit describing the rescue of the capsized student and explaining that Captain Lipinski had assembled a nomination packet that "included two sworn witness statements attesting to [his] actions. *Id.* at 44. He also provided the citation for the Public Service Commendation that he received, which summarizes his actions. *Id.* at 70. And he included Captain Lipinski's affidavit "attest[ing]" that the witness statements "exist[ed]" and that he "relied on them to write the summary of action" that the Coast Guard "incorporated into the citation for the Public Service Commendation." *Id.* at 69.

The Board did not, as Plaintiff contends, ignore these materials and deny his request for correction of his military records "*solely* because he could not provide [two] eyewitness statements to support the [Navy Medal] nomination," the equivalent of what it did in *Haselwander*. ECF No. 11-1 at 22 (emphasis added). True, the line that "the witness statements to date have not been made available" raises a *Haselwander* red flag. AR 3. That is, of course, "the very error" Plaintiff stated in his application: "that his [Navy] record lack[ed]" these eyewitness statements. *Haselwander*, 774 F.3d at 1000; *see* AR 39. But the Board's reasoning did not end there. It "considered . . . all material[s]" Plaintiff had submitted and explained that it could not "'fill the evidentiary gap and waive the eyewitness testimony requirement based on [Captain] Lipinski's testimony that such eyewitness statements previously existed as part of a Coast Guard GLM submission." AR 1, 3

(internal quotation marks omitted).³ And while the Board would have "like[d]" to "review[]" the nomination materials submitted for the award Plaintiff *did* receive—the Public Service Commendation—"and/or any supporting evidence upon which it was based," such evidence was not "made available." *Id.* at 3. So it concluded that "[Captain] Lipinski's testimony was not a functional equivalent of, or adequate substitute for, the two required witness statements." *Id.* As such, the Board allowed for the possibility that *some* evidence could have substituted for the missing two eyewitness statements but concluded, after reviewing what Plaintiff submitted, that it was insufficient. That is not what happened in *Haselwander*.

Plaintiff also argues that the Board "unreasonably discounted" Captain Lipinski's affidavit and the citation in concluding that his evidence could not substitute for the two required eyewitness statements. ECF No. 11-1 at 25. Of course, the Court cannot reweigh the evidence, and its role is not to determine whether the Board's decision was correct. *See Kight v. United States*, 850 F. Supp. 2d 165, 170 (D.D.C. 2012), *aff'd*, 2013 WL 1164035 (D.C. Cir. Mar. 1, 2013); *Barber*, 2025 WL 870364, at *4. That said, it was entirely reasonable (and not arbitrary or capricious) for the Board to conclude that Captain Lipinski's testimony—explaining how he wrote a *summary* of Plaintiff's actions based on the two witness accounts which was then "incorporated into the citation" for a different award—could not replace the witness statements themselves. AR 69. As Defendant emphasizes, the two-eyewitness requirement is "substantive," because "eyewitness testimony is a necessary element to assess whether a service member exhibited 'heroism'" and to weigh the "actual level of personal 'life threatening' risk experienced by the awardee." ECF No. 12-1 at 16; *see* SECNAV M-1650.1, App. 8A, ¶ 8A.2.b(4)(a) (eyewitness statement "must

---

³ The Board also concluded that Plaintiff's own account of his actions "cannot form the factual basis of any decoration of heroism." AR 3.

describe the awardee's actions in sufficient detail to support how the heroic act(s) rendered the awardee conspicuous and well above the standard expected" and "opin[e] as to the extent to which the nominee risked his . . . own life"). And importantly, as Defendant points out, Captain Lipinski's affidavit "merely recounts the existence" of those statements, rather than what they said. ECF No. 21-1 at 16.

True, the Board also had the citation for the Public Service Commendation that Plaintiff received. But a citation is only "an abstract" of the summary of action and "contain[s] only the most important highlights." SECNAV M-1650.1, App. 8A, ¶ 8A.2.b(3). Thus, it was hardly unreasonable for the Board to conclude that it "lack[ed] the detail necessary to make the substantive determination of eligibility" for the Navy Medal. ECF No. 12-1 at 16; *see* AR 70. And that—along with Plaintiff's own affidavit—was all the Board had as a "description of the actions" for which Plaintiff sought "recognition." SECNAV M-1650.1, App. 8A, ¶ 8A.2.b(2).

Plaintiff objects that Defendant's assertions about why the Board acted as it did in its briefing are nothing but "impermissible *post hoc* rationalization[s]." ECF No. 15 at 9. Not so. Though an agency may "not present a new basis for its action, it may supply a clearer or more detailed explanation" for a "previously-articulated rationale." *Nat'l Oilseed Processors Ass'n v. Browner*, 924 F. Supp. 1193, 1204 (D.D.C) (citing *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1233 n.11 (D.C. Cir. 1994)). As noted, the Board explained then that it could not "fill the evidentiary gap" based on Plaintiff's "own account of [his] actions" or Captain Lipinski's affidavit. AR 3. And it characterized the latter as "not a functional equivalent of, or adequate substitute for, the two required eyewitness statements." *Id.* So Defendant's explanation for why the materials could not replace the mandatory two eyewitness statements "falls more squarely in the 'more detailed explanation' camp than the '*post-hoc* rationalization' camp." *Grossmont Hosp. Corp. v. Sebelius*,

903 F. Supp. 2d 39, 58–59 n.10 (D.D.C. 2012). No doubt "the Board's reasoning could . . . be clearer and more thorough." *McKinney v. Esper*, No. 18-cv-371 (TSC), 2020 WL 2735571, at *4 (D.D.C. May 26, 2020), *aff'd sub nom. McKinney v. Wormuth*, 5 F.4th 42 (D.C. Cir. 2021). But it "need not be 'a model of analytical precision to survive a challenge,'" provided its "path may reasonably be discerned." *Annicelli v. Kendall*, No. 20-cv-02647 (CJN), 2022 WL 951268, at *6 (D.D.C. Mar. 30, 2022) (quoting *Dickson*, 68 F.3d at 1404). The Board's decision passes muster.

Taking a final stab at a *Haselwander* comparison, Plaintiff argues that the Board "disregard[ed]" what Plaintiff says is "uncontested, creditable evidence of the existence and substance of the eyewitness statements." ECF No. 15 at 8; *see* ECF No. 11-1 at 24–26. This analogy comes up short as well. To begin, and as already explained, the Board did not disregard any evidence Plaintiff submitted. And more to the point, while Captain Lipinski's affidavit unquestionably supported the *existence* of those statements at one time, the Board had no direct evidence of their *contents* (other than the citation). So it was not arbitrary and capricious for the Board to conclude that Plaintiff's evidence was insufficient. By contrast, the Board in *Haselwander* ignored "uncontested, creditable evidence" that the plaintiff had been wounded in combat and required medical treatment—direct evidence of what the medical records would have shown, had they existed. 774 F.3d at 1000. Similar evidence of what the missing eyewitness statements here would have shown, especially given the level of detail needed to decide whether Plaintiff qualified for the Navy Medal, is what the Board reasonably found lacking here.

Nothing about the above analysis diminishes Plaintiff's actions on Lake Mendota back in 1992 or says anything about whether those actions deserve the Navy Medal. And it is regrettable that Plaintiff was not nominated for the award before the two eyewitness statements were apparently lost. But under the unusually deferential standard of review in the military-records context,

the Court "cannot say that the Board acted unreasonably by declining to amend [Plaintiff's] naval record" in the way he requested. *Jackson v. Mabus*, 808 F.3d 933, 936 (D.C. Cir. 2015).

**IV.     Conclusion**

For all these reasons, the Court will grant deny Plaintiff's Motion for Summary Judgment, grant Defendant's Cross-Motion, and enter judgment for Defendant. A separate order will issue.

/s/ Timothy J. Kelly<br>TIMOTHY J. KELLY<br>United States District Judge

Date: May 19, 2025